IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| FADIL SALIM SALIH,<br><br>    Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration;<br><br>    Defendant. | 4:11CV3218<br><br>MEMORANDUM AND ORDER |

  The plaintiff has moved to amend the court's prior judgment pursuant to Rule 59 of the Federal Rules of Criminal Procedure. (Filing No. 37). The plaintiff seeks clarification or a ruling on two issues:

- Whether the hypothetical question posed to the Vocational Expert ("VE") omitted uncontrovertered impairments documented of record, thereby rendering the VE's testimony insufficient to support denial of Plaintiff's claim; and

- Whether the jobs cited by the ALJ to deny plaintiff's claim at step five lie beyond Plaintiff's Residual Functional Capacity ("RFC") as found by the ALJ.

(Filing No. 37). The defendant opposes Plaintiff's motion, asserting the court's prior Memorandum and Order sufficiently addresses the issues raised. (Filing No. 40).

  To assure that all matters are addressed sufficiently for Plaintiff's anticipated appeal, the court will clarify its memorandum and order on the RFC issue, and it will discuss Step 5 of Plaintiff's disability claim.[1]

---

[1] To be clear, the ALJ's discussion regarding Step 5, totaling no more than three paragraphs of his opinion, was not incorporated into his ruling. The ALJ concluded the plaintiff remains able to perform the requirements of his past relevant work and therefore "has not been under a disability, as defined in the Social Security Act, from December 12, 2007 through the date of this decision. . . ." (TR 28). The ALJ's listed findings and conclusions do not address Step 5; that is,

ANALYSIS

1) <u>Sufficiency of hypothetical question</u>—unmentioned limitations.

The ALJ's hypothetical question posed to the VE asked whether a person could perform the plaintiff's past relevant work in a job with normal mid-morning and mid-afternoon breaks assuming that person was the plaintiff's age and had his education and work history, and should avoid exposure to constant cold and wetness, but is able to lift up to 20 pounds occasionally and 10 pounds frequently; can sit or stand for six hours in an eight-hour day; has unlimited use of his extremities; can occasionally bend, stoop, and kneel; can walk on a frequent basis, and can reach above the head and climb stairs without difficulty. (TR 64-65).

The plaintiff claims this hypothetical question was incomplete. Specifically, plaintiff argues the ALJ failed to include the plaintiff's uncontroverted need for "break-timing," "standing tolerance restrictions," and to move at a slow gait in the question posed to the VE, and his decision does not explain the omission of these restrictions in the hypothetical question. (Filing No. 41, at at CM/ECF p. 7). The plaintiff argues:

> [T]he record contains uncontradicted evidence of a standing tolerance limited to less than six hours by an assessment (Tr. 415, 414) to which the ALJ gave "considerable weight" (Tr. 25); it also contains such evidence of slowness of gait observed by several doctors during examination, evidence which the ALJ did not discredit.

(Filing No. 41, at at CM/ECF pp. 6-7).

---

whether other work exists in significant numbers in the national economy that the plaintiff remains able to perform, given his RFC, age, education, and work experience. (TR 21).
    Since the ALJ made no ruling as to Step 5, and did not rely on the evidence supporting Step 5 in denying Plaintiff's claim, the court questions whether it is required (or even should) comment on whether the ALJ's Step 5 discussion was sufficiently supported by the record. Neither party has addressed this issue in the post-judgment briefing.

As explained in the court's initial opinion, the ALJ's opinion provides a thorough explanation of why he considered the plaintiff's subjective complaints to be not fully credible. The opinion also includes an analysis of the treating physician's records, with an explanation of the extent of reliance placed on each provider's findings. The ALJ's specific references to medical provider opinions and claims processing information were correct, and his ultimate conclusion that the plaintiff's subjective complaints were not fully credible was substantially supported by the record as a whole.

Plaintiff argues that the ALJ's hypothetical question posed to the VE was incomplete because it did not mention every limitation raised by the plaintiff's testimony and medical records. Plaintiff claims each of his subjective complaints must be included in the ALJ's hypothetical question to the VE unless the ALJ's opinion specifically addresses the alleged limitation and explains why was omitted from the RFC findings. This argument has been previously raised by Plaintiff's counsel and rejected by the Eighth Circuit. Courts must "review the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but we do not require an ALJ to mechanically list and reject every possible limitation." McCoy v. Astrue, 648 F.3d 605, 614-615 (8th Cir. 2011).

Plaintiff argues the ALJ erred by affording "considerable weight" to Dr. Green's opinions, but not including every limitation identified by Dr. Green into the hypothetical opinion. The ALJ must consider the record as a whole; he is not required to adopt, in totality, the opinions of any medical provider—even those he considers worthy of "considerable weight." And provided the ALJ's opinion indicates (as it does in this case) that he reviewed and considered the medical record, the ALJ is not required to list each limitation identified by a specific medical provider and explain why is was not incorporated into the RFC findings. "[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." Wildman v. Astrue, 596 F.3d 959, 966 (8th Cir. 2010) (quoting Black v.

Apfel, 143 F.3d 383, 386 (8th Cir.1998)). Given the ALJ's specific reliance and reference to findings set forth in Dr. Green's records, the court finds it "highly unlikely that the ALJ did not consider and reject" other limitations also referenced in those records. Wildman v. Astrue, 596 F.3d 959, 966 (8th Cir. 2010). See also Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) (claimant's argument that the ALJ selectively ignored portions of the offered medical opinions was rejected where the record also contained the opinions of consulting physicians whose observations did not support claimant's allegation of complete disability); Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) (holding the ALJ did not error by incorporating some of a medical provider's findings into his decision, while not specifically discrediting other portions).

As to the specific limitations which were allegedly uncontroverted but nonetheless omitted from the hypothetical question, the court finds the record, considered as a whole, substantially supports the hypothetical question as posed. Plaintiff cites three alleged omissions; the plaintiff's need for "break-timing," his "standing tolerance restrictions," and his "slow gait."

Plaintiff claimed he must have breaks to lie down every two hours. The ALJ's opinion specifically acknowledged and rejected this subjective complaint. The ALJ referenced plaintiff's testimony that any job must afford him "the opportunity to lie down every two hours." (TR 23). But after reviewing the record as a whole, the ALJ concluded and specifically stated that this subjective symptom was only partially credible. The opinion states:

> The claimant specifically testified that he must lie down after every two hours (for an unspecified time) in order to experience relief from his back and/or hip pain, and while the opinion of Dr. Green indicated that he would require breaks every two hours (which is customary for most employment) from exertional activities, there exists no evidence to support his allegation that he must lie down to experience appreciable relief, or that his disabilities otherwise preclude his ability to perform work.

(TR 25). The ALJ's assessment of the evidence is supported by the record as a whole.

Moreover, the ALJ's hypothetical question did incorporate the plaintiff's need for "normal breaks, you know, a mid morning break, an afternoon break, lunch break." (TR 65). When considering the 8-hour workday contextual framework for this question, the ALJ's hypothetical question posed to the VE did include a requirement that Plaintiff be afforded breaks every two hours as fully supported by Dr. Green's records. Contrary to the plaintiff's argument, to the extent the ALJ found it credible, Plaintiff's need for "break-timing" was raised in the hypothetical question.

Plaintiff claims his uncontroverted "standing tolerance restrictions" were not included in the hypothetical question. The plaintiff's standing limitations, if any, were based on his subjective complaints of pain. The ALJ's opinion specifically mentioned the plaintiff's testimony that "he can only stand . . . for one to two hours . . . before his back causes too much pain." (TR 23).

The ALJ's hypothetical question asked the VE to assume the plaintiff can stand for six hours in an eight-hour day. In response to SSA interrogatories, the plaintiff had previously stated he could stand for four hours in an eight-hour day. (TR 216). The Physical RFC evaluation completed by Dr. Reed stated the plaintiff was able to stand (with normal breaks) about 6 hours in an 8-hour workday if afforded breaks every two hours, (TR 306); an assessment later reviewed and affirmed by Dr. Knosp, (TR 343). Dr. Green, Plaintiff's treating chiropractor, wanted the plaintiff to undergo a Functional Capacity Evaluation (FCE) before he (Dr. Green) rendered an opinion regarding Plaintiff's work limitations. (TR 412). Unfortunately, the plaintiff's FCE was deemed invalid because "[n]umerous subjective and objective inconsistencies were seen throughout the assessment." (TR 400). Even in light of these inconsistencies, the FCE evaluator concluded the plaintiff remains able to stand either frequently (up to two-thirds of the day) or constantly (the entire day) if afforded normal breaks, (TR 405), while explaining that "[d]ue to the invalid nature of today's FCE, this data cannot be used confidently for vocational planning." (TR 404). After receiving this report, Dr. Green

concluded the plaintiff can stand frequently—up to two-thirds of the day, with breaks every two hours. (TR 414-15).

Given the discrepancies between Plaintiff's subjective complaints and the objective findings, the fact that the source of plaintiff's subjective pain complaints was not located or fully understood by his medical providers, Dr. Green's own hesitation with assessing Plaintiff's functional limitations without an FCE, the lack of a valid and reliable FCE, and the ALJ's assessment and explanation (set forth in his written opinion) that the plaintiff was only partially credible, the ALJ had a substantial basis for concluding the plaintiff's ability to stand was not limited to "frequently;" that is, up to two-thirds of the day. The ALJ did not error by posing a hypothetical question which asked the VE to assume the plaintiff could stand six to eight hours in an eight-hour day.

Finally, the plaintiff claims the ALJ failed to reference the plaintiff's "slow gait" in the hypothetical question. He claims that absent knowledge of this limitation, the VE could not realistically evaluate and accurately opine regarding the plaintiff's continued ability to perform his past relevant work.

Upon review of the medical records, the plaintiff's gait varied from one appointment to another. It was considered "normal" on December 13, 26, and 28, 2007, and on January 8 and 30, 2008, (TR 250, 259, 261, 269, 281); stiff on March 14, 2008 (TR 290); somewhat antalgic on June 2, 2008 (TR 385); normal again on September 11, 2008, (TR 321); slowed on October 21, 2008 (TR 347); very guarded on November 7, 2008 (TR 356); and antalgic on January 21, 2009. (TR 390). During the musculoskeletal evaluation portion of his FCE on March 24, 2009, "[g]ait analysis reveal[ed] a slow, deliberate pace with decreased thoracolumbar rotation." (TR 401) But when the FCE evaluation was focused on nonmaterial handling activities, "Fadil was able to complete 8 minutes and 46 seconds of continuous walking before requesting to stop due to central low back pain, with pain radiating into the right hip and sacroiliac region," and the evaluator "did not note any significant breakdown in gait or significant antalgia at

6

that time." (TR 403). This same FCE was considered invalid because of Plaintiff's subjective and objective inconsistencies.

The ALJ was required to include in his hypothetical question only those limitations he found to be credible. Based on the medical record, the plaintiff's subjective "slow gait" was certainly suspect. The ALJ concluded the plaintiff was not fully credible, and he apparently concluded Plaintiff's gait was not impaired. The hypothetical question was not erroneous for failing to include Plaintiff's slow gait.

The ALJs' hypothetical question, and the limitations described therein, was substantially supported by the record as a whole.

    2.    <u>Evaluation at Step 5</u>.

Relying on the VE's opinion, the ALJ's decision noted a person of plaintiff's residual ability, age, education, and work experience could perform the job of a hand packager (with 14,448 such jobs regionally, and 319,964 jobs nationally); and a housekeeping cleaner (with 17,783 such jobs regionally, and 376,362 jobs nationally). The ALJ disregarded the hand packager job identified during the VE's testimony, explaining that based on the Dictionary of Occupational Titles, the job requires an exertional level which exceeds the plaintiff's RFC. But the ALJ nonetheless concluded the plaintiff could perform the occupation of housekeeping cleaner; a job which, as described in the Dictionary of Occupational Titles, did not exceed the claimant's RFC. (TR 28).

The description of a [Cleaner, Housekeeping, (DOT 323.687-014)](#) in the Dictionary of Occupational Titles is consistent with the ALJ's RFC determination as included in the hypothetical question posed to the VE. The VE testified there are 17,783 of those jobs in the light, unskilled category in the Iowa, Nebraska, Missouri, and Kansas the four-state region, and 376,362 such jobs nationally. Had the ALJ concluded the Plaintiff was unable to return to his past relevant work, the Plaintiff was nonetheless not disabled at Step 5

because Plaintiff remained able to perform work existing in significant numbers in the regional and national economy.

Having evaluated the issues as requested by the plaintiff, the court continues to find that the ALJ's decision is supported by substantial evidence on the record as a whole. The court's prior judgment will not be altered or amended. Accordingly,

IT IS ORDERED that Plaintiff's Motion to Amend or Alter, (Filing No. 37), is denied.

April 8, 2013.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.